IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ALBERTO FALLIN CAMACHO | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. 13-cv-1303-JKB |
| CAROLYN W. COLVIN | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Alberto Fallin Camacho ("Plaintiff") brought this suit against Carolyn M. Colvin, Acting Commissioner of the Social Security Administration ("SSA" also "Agency"), ("Defendant") alleging employment discrimination on the basis of race and sex and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. Plaintiff further alleges that Defendant failed to accommodate his physical disability in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq*. Now pending before the Court is Defendant's motion to dismiss the amended complaint or, in the alternative, for summary judgment. (ECF No. 20.) For the reasons set forth below, the motion will be GRANTED IN PART and DENIED IN PART.

I.    BACKGROUND [1]

Plaintiff is "an Hispanic-Malaysian male of African-American descent" who, at all relevant times, was employed in the SSA's Office of Civil Rights and Employment Opportunity ("OCREO"). (Am. Compl. ¶¶ 5, 6, ECF No. 14.) Since at least September 2010, Plaintiff has

---

[1] The facts are recited here as alleged by the Plaintiffs, this being a ruling on motions to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

"repeatedly objected to SSA's failure to properly handle and respond to complaints of employment discrimination." (*Id.* ¶ 8.)

Plaintiff complains, first, that since May 2009 he has been denied overtime on a discriminatory basis. (*Id.* ¶¶ 35, 36.) In particular, between April 2009 and the end of 2011—with the exception of the period between April and November 2010, when Chet Kleinman was his supervisor—Plaintiff's requests to work overtime were "almost never approved." (*Id.* ¶¶ 26, 27.) During this period, Plaintiff requested overtime work on average twice per month. (*Id.* ¶ 26.) Plaintiff asserts that female employees and employees who "did not object to improper handling of EEO complaints" were allowed to work overtime at least once a month. (*Id.* ¶¶ 31-36.)

Plaintiff complains, second, that he was discriminated against in a variety of ways for "objecting to the improper handling of EEO complaints." (*See* ¶¶ 37-51.) In particular, he was (1) denied a temporary appointment to the Equal Employment Opportunity Commission ("EEOC") (*Id.* ¶ 37); (2) denied a pay increase, in the form of a "quality step increase" (*Id.* ¶ 41); (3) denied awards (*Id.* ¶ 44); (4) not provided a 2011 mid-year performance review (*Id.* ¶ 46); (5) harassed by his supervisor who called him names, detained him in his cubicle, and assaulted him with a cell phone (*Id.* ¶ 47); and (6) denied a promotion in 2009 (*Id.* ¶¶ 49-51).

Third, Plaintiff alleges that he was denied another promotion—this one to a GS-14 position as a Supervisory Equal Employment Opportunity Specialist—in February 2012 on the basis of his race and sex and as retaliation for his "object[ion] to improper handling of EEO complaints." (*See Id.* ¶ 54.) Plaintiff applied for the position, but the Agency selected Laura Webb, "a non-Hispanic white female employee who had not objected to improper handling of

EEO complaints". (*Id*. ¶ 54.)  Plaintiff alleges that he was "better qualified for the promotion than Ms. Webb was." (*Id*. ¶ 55; *see also* ¶¶ 56-75.)

Finally, Plaintiff complains that the Agency has failed to accommodate his disability. (*Id*. ¶¶ 80-82.)  Specifically, since 2009, Plaintiff has suffered from a cracked spine, which has "substantially limited his ability to sit without pain or to carry heavy objects." (*Id*. ¶ 76.)  In addition, the pain medication he takes to control these symptoms makes it difficult for him to sleep and focus. (*Id*. ¶¶ 77-78.)  Since May 2009, Plaintiff has been requesting an orthopedic chair as an accommodation for his condition, but the Agency has failed to provide one. (*Id*. ¶¶ 79-80.)  Even without an orthopedic chair, however, Plaintiff has "performed his job excellently." (*Id*. ¶ 81.)

On August 20, 2011, Plaintiff sought counseling concerning the claims set forth in his complaint.[2] (*Id*. ¶ 12.)  On November 21, 2011, Plaintiff filed a formal administrative complaint, which he amended on April 13, 2012 to add his claim that he was denied a promotion to a GS-14 position as a Supervisory Equal Employment Opportunity Specialist. (*Id*. ¶¶ 14-15.)

Then, on May 1, 2013, Plaintiff filed the present action. (ECF No. 1.)  On September 19, 2013, he filed the amended complaint (Am. Compl.) that is the subject of the motion to dismiss or, in the alternative, for summary judgment, that is now before the Court (ECF No. 20).

## II. LEGAL STANDARD

### a. Motion to dismiss

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their]

---

[2] Count VIII, the claim that he was denied a promotion to a GS-14 position as a Supervisory Equal Employment Opportunity Specialist in February 2012(Am. Compl. ¶¶ 52-75) was added as an amendment to his formal administrative complaint on April 31, 2012. (*Id*. ¶ 15.)

face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions.  *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed.  *Iqbal*, 556 U.S. at 679.

      **b.**    **Motion for summary judgment**

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial.  FED. R. CIV. P. 56(e)(2).  To carry these respective burdens, each party must support its assertions by citing specific evidence from the record.  FED. R. CIV. P. 56(c)(1)(A).  The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

**III.**    **ANALYSIS**

Title VII makes it unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It also forbids

employers from retaliating against an employee who has openly opposed such discrimination, or any other employment practice that the statute makes unlawful. 42 U.S.C. § 2000e-3(a). It does not provide a remedy for an employer's retaliation against an employee for opposing practices, even if discriminatory, that are outside the scope of the statute. *See Crowley v. prince George's County, Md.*, 890 F.2d 683, 687 (4th Cir. 1989). Here, Plaintiff alleges claims under Title VII for disparate treatment and retaliation.

Further, the Rehabilitation Act makes it unlawful for the Federal government to discriminate against its employees on the basis of disability and incorporates the standards set forth in the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[3]  29 U.S.C. § 794.  Here, plaintiff alleges that the Agency failed to provide him with reasonable accommodation, in violation of the Rehabilitation Act.

    **a.**    **Retaliation**

In order to state a claim for retaliation, Plaintiff must allege facts to support the inference that "(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity." *Bryant v. Aiken Regional Medical Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)). The anti-retaliation provision of Title VII contains two distinct clauses defining protected activity: (1) the "opposition clause," which makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter;" and (2) the "participation clause," which makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any

---

[3] The federal government is excluded from the ADA's definition of "employer." 42 U.S.C. 12111(5)(B)(i).

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff's proper retaliation claim must therefore allege that his employer took an adverse action in response to the employee's "opposition" to a practice made unlawful by § 2000e-2 or "participation" in an investigation, proceeding, or hearing of an employment practice made unlawful by § 2000e-2.

Here, Plaintiff alleges that he "repeatedly objected to SSA's failure to properly handle and respond to complaints of employment discrimination" (Am. Compl. ¶ 8) and that he was discriminated against for "object[ing] to the improper handling of EEO complaints" (*Id*. ¶¶ 36, 39, 42, 44, 45, 48, 50, 54). However, Plaintiff's allegations fail to state a claim for retaliation because they do not allow the Court to draw the reasonable inference that his activity constituted "opposition" to an unlawful employment practice or "participation" in an investigation, proceeding, or hearing of an unlawful employment practice.

To demonstrate retaliation under the "opposition" clause, an employee must show that he was terminated because he opposed a practice "made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a); *Boyer-Liberto v. Fonatainebleau Corp.*, No. 13-1473, 2014 WL 1891209 at *7 (4th Cir. May 13, 2014); *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011); *Tawwaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 772 (D. Md. 2010). Here, Plaintiff has alleged that he opposed "SSA's failure to properly handle and respond to complaints of employment discrimination." (Am. Compl. ¶ 8.) Such an allegation is too vague to allow the Court to draw the conclusion that Plaintiff was opposing an unlawful *employment* practice.

In turn, the "participation" clause protects an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). The Fourth Circuit has recognized that the protections

afforded by the "participation" clause are "essential to the machinery set up by Title VII" and, therefore, the clause is read to grant "exceptionally broad protection." *Glover v. South Carolina Law Enforcement Division*, 170 F.3d 411, 414 (4th Cir. 1999).  As this Court has explained before, "[t]he inclusion by Congress of the phrase 'in any manner' in the participation clause makes clear that 'the provision is meant to sweep broadly[.]'" *Winslow v. Locke*, No. DKC-09-0071, 2101 WL 1141200 at *6 (D. Md. March 22, 2010) (quoting *Glover*, 170 F.3d at 414)).  However, the protections of the "participation" clause are not infinitely elastic.

Here, Plaintiff's allegation is that he complained about the Agency's handling of employment discrimination complaints generally.  However, such a complaint regarding the SSA's administrative operations does not constitute participation in any investigation, proceeding or hearing.  Had Plaintiff alleged that he had objected to SSA's handling of a particular employment discrimination complaint, the Court might be inclined to consider that Plaintiff had participated in a Title VII proceeding.  However, Plaintiff has not so alleged.

Plaintiff, in this motion to dismiss (ECF No. 27), argues that to grant Defendant's motion to dismiss as to his claims of retaliation is to hold that "anti-retaliation laws do not, under any circumstances, protect against reprisal for objecting to management's systematic failure (or refusal) to properly investigate and decide administrative EEO complaints." (*Id*. At 7.)  The Court disagrees.  Rather, the Court's holding is that an employee enjoys protection from retaliation under the participation clause only if he participates in an investigation, proceeding, or hearing under Title VII.  The Court notes that all the cases cited by Plaintiff support this conclusion.[4]  While it might be that an employee should be protected from retaliation when he

---

[4] *Padin v. Runyon*, EEOC DOC 01931775, 1994 WL 733879 at * (July 28, 1994) ("Appellant also states that she was one of the Counselor/Investigators assigned to a highly visible sexual harassment investigation in New Haven, Connecticut, and that her involvement caused her nonselection to the Manager position."); *Simpson v. Department of Treasury of Treasury*, EEOC DOC 05930570, 1994 WL 1841189 at *5 (Mar. 11, 1994) ("In this case, appellant

objects to an agency's general handling of complaints, such protection is beyond the ambit of the "participation" clause of Title VII.[5]

Accordingly, Plaintiff has failed to state a claim for retaliation for which relief can be granted. Therefore, Counts II, III, IV, V, VI, and VII shall be dismissed. Further, Plaintiff's claim for retaliation within Counts I and VIII—though not the counts in their entirety—shall also be dismissed.

      b.      **Timeliness and Exhaustion of Administrative Remedies: Count I**

Where, as here, a Title VII action is brought by a federal employee, plaintiffs must exhaust their administrative remedies in a timely fashion. In particular, federal employees "must initiate contact with a[n EEO] Counselor within 45 days of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *Smith v. Vilsack*, 832 F.Supp.2d 573, 581 (D. Md. 2011). This forty-five-day time limit functions as a statute of limitations. *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir. 1985).

In the case at bar, the alleged acts of discriminatory conduct took place "[b]etween April 2009 and the end of 2011" and therefore, at least in part, more than forty-five days prior to August 10, 2011, when Plaintiff sought EEO counseling. (Am. Compl. ¶¶ 26, 12.) Defendant therefore argues that Count I should be dismissed with regard to the acts of alleged

---

has been a participant in the EEO process as an EEOFR Counselor, and based solely on that participation, was denied the opportunity to serve in an acting supervisor capacity."); *Bell v. Environmental Protection Agency*, EEOC DOC 01853377, 1987 WL 775516 at *3 (July 3, 1987) ("The record indicates that appellant engaged in prior protected Equal Employment Opportunity activity, namely, she was listed as a witness, and the agency believed she gave statements to complainant in her MSPB suit which alleged, inter alia, discrimination based on race."); *Proctor v. United States Postal Serivce*, EEOC DOC 01810856, 1981 WL 636830 at *3 (Aug. 17, 1981) ("The appellant alleges in his appeal letter that in his present position he is directly involved with EEO Complaints process. He contends that his EEO activity is in the area of attempting to resolve complaints[.]")

[5] In fact, Defendant has suggested that Plaintiff may have a cause of action under the Whistleblower Protection Act ("WPA"), 5 U.S.C. §2302 (b)(8). (ECF No. 20 at 12.)

discrimination that occurred prior to June 17, 2011 (i.e. forty-five days prior to Plaintiff's contact with an EEO Counselor). (ECF No. 32 at 16.)

In response, Plaintiff appears to invoke the "continuing violation theory," which "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single pattern." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002); *Smith v. Vilsack*, 832 F.Supp.2d 573, 581 (D. Md. 2011); (ECF No. 28 at 3 ("Whether the complaint properly encompasses violations prior to 45 days before August 10 depends on the facts and on the definition of 'continuing.'").) However, the "continuing violation theory" is inapposite in cases, such as this one, where a plaintiff "has alleged discrete violations." *Holland*, 487 F.3d at 220. Here, Plaintiff has complained that "between April 2009 and the end of 2011, [he] made an average of two requests per month to work overtime" and that these "requests were almost never approved." (Am. Compl. ¶¶ 26, 27.) These constitute allegations of discrete discriminatory acts—one ach time Plaintiff's overtime request was denied on an impermissible basis—and therefore "are not actionable if time barred even when they are related to acts alleged in timely filed charges." *Holland*, 487 F.3d at 220 (quoting *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113 (2002)).

Therefore, Count I shall be dismissed with regard to the acts of alleged discrimination that occurred prior to June 17, 2011 (i.e. forty-five days prior to Plaintiff's contact with an EEO Counselor).

    c.    **Disparate Treatment: Count I**

In order to prove disparate treatment in the employment discrimination context, a Plaintiff may offer either direct evidence of discriminatory intent, or circumstantial evidence.

Where a Plaintiff offers circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, the Supreme Court has explicitly held that at the motion to dismiss stage, Plaintiff need not plead a *McDonnell Douglas prima facie* case. *Twombly*, 550 U.S. 544 at 547 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nonetheless, the elements of a *prima facie* case are useful to the Court in determining whether or not a Plaintiff's allegations are sufficient. These elements are: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See White v. BFI Waste Services*, 375 F.3d 288, 296 (4th Cir. 2004).

Here, Plaintiff has satisfactorily pleaded each of these elements with regard to his claim of discrimination on the basis of sex in Count I. Indeed, he has pleaded that he was treated differently from similarly situated female colleagues in the assignment of overtime work. In particular, he has pleaded that he "made an average of two requests per month to work overtime" and that those "requests were almost never approved."[6] Further, he has alleged that "at least once a month female employees were allowed to work overtime" and, more generally, that "female employees in OCREO have been favored over [him] in the distribution of overtime work opportunities." Plaintiff has therefore adequately pleaded a claim of employment discrimination on the basis of sex with regard to his denial of overtime work. In this respect, the motion to dismiss is therefore denied.

---

[6] In addition, Plaintiff's allegation that Ms. Deanner Lassiter White received approximately $60,000 in overtime pay between April 2009 and the end of 2011, allow the Court to draw the reasonable inference that the denial of overtime work constitutes an adverse employment action. (Am. Compl. ¶ 33.)

Further, with regard to Count I, Defendant's motion, in the alternative, for summary judgment is also denied. Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, a court may allow a nonmoving party additional time to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present essential facts to justify its opposition." Fed. R. Civ. P. 56(d). In particular, in cases such as the one at bar, where the nonmovant has not been afforded an opportunity to take discovery, Rule 56(d) "is designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir.1986); *White v. Bank of America, N.A.*, Civ. No. CCB-10-1183, 2012 WL 1067657 at *5 (D. Md. Mar. 27, 2012).

Here, Plaintiff has detailed a legitimate need for specific further discovery. Indeed, Plaintiff has offered that "[t]he relevant data, which presumably will be produced in discovery, would show each overtime request by each employee, and management's response to it." (ECF No. 28 at 4.)

Although Plaintiff made this proffer in his response to Defendant's motion rather than in an affidavit or declaration, the Court nonetheless finds that because these details are essential to the merits of Plaintiff's claims and because the necessary information is in Defendant's custody and control, summary judgment as to Count I is denied as premature. Both parties may conduct discovery and submit a motion for summary judgment at a later date, if appropriate.

    **d.    Disparate Treatment: Count VIII**

With regard to Count VIII, as with regard to Count I, Plaintiff has satisfactorily pleaded each of the elements of a disparate treatment claim—here on the basis of sex and race. Plaintiff has pleaded that he is "an Hispanic-Malaysian male of African-American descent." (An, Compl. ¶ 6.) Next, Plaintiff has pleaded that he was at least as well qualified for a promotion to a GS-14

position as a Supervisory Equal Employment Opportunity Specialist as Ms. Laura Webb, who was ultimately hired. (*Id.* ¶¶ 55-75.) Finally, Plaintiff has pleaded that he applied for the position but was denied (*id.* ¶¶ 53, 54) and that the Agency hired Webb, a "non-Hispanic white female" to fill the position (*id.* ¶ 54).

Plaintiff has therefore adequately pleaded a claim of employment discrimination on the basis of sex with regard to the Agency's denial of his promotion to a GS-14 position as a Supervisory Equal Employment Opportunity Specialist.

Further, with regard to Count VIII, Defendant's motion, in the alternative, for summary judgment is also denied. Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the Court finds that Plaintiff has detailed a legitimate need for specific further discovery. In his complaint, Plaintiff alleged a number of reasons for which he believed he was better qualified than Ms. Webb (Am. Compl. ¶¶ 55-75) and now requests an opportunity to take her deposition as to her qualifications (ECF No. 28 at 7).

The Court recognizes that Defendant has provided documentation of the selection decision, including affidavits by Alan Frank, who made the ultimate hiring decision (ECF No. 32-4) and by the three members of the interview panel, Rafique Anderson (ECF No. 32-5), Daniel Gibson (ECF No. 32-6), and Karen Ames (ECF No. 20-8). Defendant also provided the experience and qualifications statement that Ms. Webb provided when she applied for the GS-14 position.

However, Plaintiff has raised a legitimate need for specific further discovery regarding Ms. Webb's qualifications. Therefore, summary judgment as to Count VIII is denied as

premature. Both parties may conduct discovery and submit a motion for summary judgment at a later date, if appropriate.[7]

### e. Failure to Accommodate: Count IX

In Count IX, Plaintiff alleges that despite repeated requests for an orthopedic chair as an accommodation for his cracked spine—a condition from which he has suffered since 2009—Defendant has failed to accommodate Plaintiff's disability. (Am. Compl. ¶¶ 76-82.) Defendant has moved to dismiss Count IX on the basis (1) that Count IX is untimely (ECF No. 20 at 19) and (2) that Plaintiff has failed to adequately plead a failure to accommodate claim (*Id.* at 16-19).

The Court first addresses Defendant's argument that the claim is untimely. Just as with Title VII claims, federal employees who bring claims under the Rehabilitation Act must exhaust their administrative remedies. *See Lerner v. Shinseki*, Civ. No. ELH-10-1109, 2011 WL 2414967 at *5 (D. Md. June 10, 2011). In particular, federal employees "must initiate contact with a[n EEO] Counselor within 45 days of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *Id.* Here, Plaintiff alleges that since May 2009, he "has repeatedly informed management that his back problems made it difficult to sit without pain" (Am. Compl. ¶ 78) and "has been requesting an orthopedic chair as an accommodation to his back problem" (*Id.* ¶ 79). On August 10, 2011, Plaintiff sought counseling. (*Id.* ¶ 12.)

At this point in the proceedings, the Court finds that Plaintiff's allegations with regard to exhausting administrative remedies are sufficient to overcome a motion to dismiss. Indeed, the Court infers from plaintiff's pleadings that at least one such request was made within forty-five days of August 10, 2011. In so finding, the Court notes that the forty-five-day counseling requirement is not jurisdictional and operates as a statute of limitations. *Zipes,* 455 U.S. at 393.

---

[7] The Court once again notes that Plaintiff should have detailed his legitimate need for specific further discovery proffer in an affidavit or declaration.

Next, the Court addresses the sufficiency of the allegations. As this Court has previously explained, "[t]he basic tenet of the Rehabilitation Act of 1973, which governs employee claims of disability discrimination against the federal government, is that the government must take affirmative steps to accommodate the handicapped, except where undue hardship would result."[8] *Nanette v. Snow*, 343 F.Supp.2d 465, 472 (D. Md. 2004) (citing 29 C.F.R. § 1614.203; *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C.Cir.1993)). A failure to accommodate claim under the Rehabilitation Act requires a Plaintiff to establish: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). The Court finds that Plaintiff has adequately pleaded each of these elements.

Indeed, Plaintiff has pleaded that as a result of his cracked spine, since 2009, he has been unable to sit without pain or to carry heavy objects. As a result, the Court finds that Plaintiff has successfully pleaded that he is "substantially limit[ed] [in his] ability . . . to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).[9] Next, Plaintiff has pleaded that "[s]ince 2009, [he] has repeatedly informed management that his back problem made it difficult to sit without pain, and that his pain medication made it difficult to sleep and focus." (Am. Compl. ¶ 78.) Additionally, Plaintiff has pleaded that since May 2009, he "has been requesting an orthopedic chair as an accommodation to his back problem."

---

[8] In 1992 Congress amended the Rehabilitation Act to incorporate the substantive standards of the Americans with Disabilities Act, which is not otherwise applicable to federal employees. *See Rhoads v. Fed. Dep. Ins. Corp., 257 F.3d 373, 388 n. 13 (4th Cir.2001).
[9] Major life activities include sitting and lifting. 29 C.F.R. § 1630.2(i)(1)(i). Further, the Court notes that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." § 1630.2(j)(1)(i).

14

(*Id.* ¶ 79.)  Further, Plaintiff has pleaded that with an orthopedic chair, he would be able to perform the essential functions of the position.  In fact, according to his pleadings, Plaintiff has been able to perform his job "excellently" even without an orthopedic chair, presumably through the use of pain medication.  (*Id*. ¶¶ 78, 81.)  It appears to the Court that implicit in Plaintiff's pleadings is the allegation that an orthopedic chair would help further alleviate his pain when sitting and would allow him to depend less on pain medication which causes him trouble with sleep and focus.  (*Id.*)  Finally, Plaintiff has pleaded that the Agency has failed to provide him with the requested orthopedic chair.  (*Id.* ¶ 80.)

The Court therefore finds that Plaintiff has sufficiently pleaded his claim of failure to accommodate under the Rehabilitation Act.   Defendant's motion to dismiss is therefore denied as to Count IX.

**IV.    CONCLUSION**

Accordingly, an order shall issue granting in part and denying in part Defendant's Motion to Dismiss or, in the alternative, for summary judgment.  (ECF No. 20.)

Specifically, Counts II, III, IV, V, VI, and VII are dismissed in their entirety.

Further, Count I and Count VIII survive the present motion to dismiss but only in part. Specifically, in Count I, Plaintiff has alleged that, from May 2009 onward, he was discriminated against on the basis of sex and unlawfully retaliated against with regard to the assignment of overtime.  (Am Compl. ¶¶ 35, 36.)  Within Count I, Plaintiff's retaliation claim is dismissed as is his claim of discrimination on the basis of sex for acts that occurred prior to June 17, 2011. Thus, Count I survives the present motion to dismiss only as a claim of discrimination on the basis of sex for acts that occurred on or after June 17, 2011.  In Count VIII, Plaintiff alleged that the Agency discriminated against him on the basis of gender and race and unlawfully retaliated

against him by denying him a promotion to a GS-14 Supervisory Equal Employment Opportunity Specialist. (*Id.* ¶ 54.) Within Count VIII, Plaintiff's retaliation claim is dismissed. As a result, Count VIII survives the present motion to dismiss only as a claim of discrimination on the basis of gender and race.

In addition, Count IX survives the present motion to dismiss in its entirety.

Finally, Plaintiff's motion, in the alternative, for summary judgment is denied without prejudice.

Dated this 17th day of June, 2014.

                                        BY THE COURT:

                                        /s/
                                      James K. Bredar
                                      United States District Judge