IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ALBERTO FALLIN CAMACHO,** | * | |
| | * | |
| Plaintiff | | |
| | * | |
| v. | | CIVIL NO. JKB-13-1303 |
| | * | |
| **CAROLYN W. COLVIN,** | | |
| | * | |
| Defendant | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Alberto Fallin Camacho ("Plaintiff") brought this suit against Carolyn M. Colvin, Acting Commissioner of the United States Social Security Administration ("SSA") ("Defendant"), alleging employment discrimination on the bases of race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.[1] Now pending before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 52.) The issues have been briefed (ECF Nos. 52, 55, and 56), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion for Summary Judgment will be GRANTED.

---

[1] In his initial and first amended Complaints, Plaintiff also alleged retaliation in violation of Title VII and failure to accommodate a physical disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The Court dismissed Plaintiff's retaliation counts in a June 17, 2014, Order. (ECF No. 37.) Subsequently, Plaintiff voluntarily dismissed his accommodation count, as well as a count pertaining to denial of overtime opportunities. (ECF No. 49–1 at 4-5, No. 55 at 4.) At this stage, then, all that remains of Plaintiff's Complaint is Count VIII, concerning denial of a promotion in violation of Title VII.

## I. *Factual Background*[2]

Plaintiff, a "Hispanic-Malaysian male of African-American descent" (ECF No. 49 ¶ 6), has worked for the SSA since 1998 or 1999, initially as a GS-8 teleservice representative (ECF No. 52–3 at 28:16-29:14). Plaintiff rose through the ranks at the SSA, becoming a claims representative in 2002 (*id.* at 31:6-9) and participating in a regional development program in 2006–07 (*id.* at 33:13-17). Through this development program, Plaintiff began his service with the Office of Civil Rights and Equal Opportunity ("OCREO"), his first foray into Equal Employment Opportunity ("EEO") law at the SSA. (*Id.* at 35:6-36:5.) Thereafter, Plaintiff held positions both in and outside of OCREO's Center for Complaints Processing ("CCP") (*id.* at 41:16-59:20),[3] eventually achieving the grade of GS-13 (*id.* at 68:9-10).

In 2012, the SSA announced a vacancy for a temporary "Supervisory Equal Employment Specialist," grade GS-14, within the CCP ("Supervisory Specialist"). (ECF No. 52–4 at 1.) The announcement enumerated major duties and ranking criteria; it also identified required qualifications, including experience with EEO program development, expert knowledge of EEO counseling and related regulations, and compliance and managerial skills. (*Id.* at 2.)

Plaintiff applied for the Supervisory Specialist position, and SSA human resources staff placed him on a list of the three most-qualified candidates. (ECF No. 52–1 at 8.) In addition to Plaintiff, the list included an employee named Allen Price and Laura Webb, the eventual selectee. (*Id.* at 8-9.) Webb had joined the SSA in 1980. (ECF No. 52–11 at 4:20-22). She

---

[2] The facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing the Motion for Summary Judgment, in this case Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

[3] Between 2007, when Plaintiff first joined the CCP, and 2012, when he applied for the position at issue in this case, Plaintiff floated between the CCP and another unit, the Policy Planning Quality Analysis Team ("PPQAT"). He requested a transfer to the PPQAT in 2010 because he believed he had experienced retaliatory discrimination after reporting violations. (ECF No. 52–3 at 53:5-22.) He rejoined the CCP in 2011 (*id.* at 56:19-22) but returned to the PPQAT in 2012 after believing he had again experienced retaliatory discrimination (*id.* at 56:24-59:20).
  Plaintiff's allegations concerning retaliation are not before the Court at this stage in the proceedings: the Court dismissed those counts in its June 2014 Order. (ECF No. 37.)

began active EEO work in 1990 (*id.* at 47:7-10), became an EEO specialist in 1997 (*id.* at 22:13-22), and joined OCREO at grade GS-13 in 2007 (*id.* at 5:19-6:18). In either 2009 or 2010, Webb was promoted to a GS-14 team leader position at the Center for Disability Services. (*Id.* at 7:3-8, 20:9-19.) Throughout her years of service, Webb gained experience reviewing reports of investigation (*id.* at 19:5-20:5, 20:20-21:2); processing hearings (*id.* at 21:8-18), appeals (*id.* at 25:4-11), and final orders (*id.* at 27:12-22); and training new staff (*id.* at 29:10-30:12).

To facilitate selection for the Supervisory Specialist position, OCREO's Associate Commissioner, Alan Frank (Caucasian male), empaneled a group of OCREO managers to interview the three finalists. (ECF No. 52–1 at 8-9.) The panel comprised Rafique Anderson (African-American male), Director of the CCP; Daniel Gibson (African-American male), Acting Deputy Associate Commissioner of OCREO; and Karen Ames (Caucasian female), senior advisor to Frank. (*Id.* at 9.) The panelists met with each candidate, asked each candidate seven identical questions, and later discussed their observations with one another. (*Id.* at 9-10.)[4]

After completing the interviews, the panelists rated both Plaintiff and Webb as "Highly Recommend[ed]," but they unanimously concluded that Webb outranked Plaintiff. (*Id.* at 10.) Anderson was swayed by Webb's "wealth of experience in EEO Counseling, Acceptance/Dismissal of formal complaints, review of Reports of Investigation, [and] processing hearings/appeals/final orders without errors" (ECF No. 52–21 at 15), and he considered Webb's interview responses more detailed than Plaintiff's (ECF No. 52–6 at 94:1-5). Gibson agreed that Plaintiff's responses "were not as strong as [Webb's] and at times did not address all of the experience required," and he added that Plaintiff did not possess Webb's degree of managerial

---

[4] There is some ambiguity in the summary judgment record regarding whether the panelists discussed each candidate after completing his or her respective interview or whether the panelists waited until they had completed all three interviews. In either event, it is undisputed that the panel conveyed a unanimous recommendation to Frank, the selecting official.

3

experience. (ECF No. 52–22 at 17.) Ames emphasized Webb's "understanding of regional and headquarters perspectives," her "extensive experience providing EEO counseling training," and her "experience as a team leader managing workloads." (ECF No. 52–23 at 4.) Having thus concluded that Webb was the strongest candidate, the panelists conveyed their recommendation to Frank, who—as selecting official—accepted their recommendation without "go[ing] behind it." (ECF No. 52–5 at 17:8.)[5] Frank offered the job to Webb, and she accepted.

Plaintiff filed the present action on May 1, 2013, alleging, inter alia, that his nonselection for the Supervisory Specialist position was motivated by unlawful discrimination in violation of Title VII. (ECF Nos. 1, 49.) Although the Court dismissed most of Plaintiff's counts in a June 17, 2014, Order (ECF No. 37), the Court allowed Plaintiff's nonselection count to proceed to discovery. On March 19, 2015, Defendant moved for summary judgment on this sole remaining count. (ECF No. 52.) Plaintiff filed a response in opposition on April 13 (ECF No. 55), and Defendant replied on April 24 (ECF No. 56).

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

---

[5] Gibson recalled a meeting with Frank at which the panelists presented their recommendation and discussed "some highlights" relating to each candidate. (ECF No. 52–8 at 15:4-16:1.) Gibson explained that prior to this meeting, Anderson had conveyed the panel's recommendation to Frank via e-mail. (*Id.* at 16:7-20.) Conversely, while Ames recalled an e-mail conveying the recommendation to Frank (ECF No. 52–7 at 18:5-19:9), she did not recall whether the panelists ever met with Frank to discuss their recommendation (*id.* at 20:18-21:9). For his part, Frank remembered receiving an e-mail that presented a unanimous recommendation without any further elaboration (ECF No. 52–5 at 24:18-25:7), and in fact such an e-mail appears in the summary judgment record (ECF No. 52–24).
  Ultimately, because the Court rejects Plaintiff's singular decision-maker theory, *see infra* Part III.B, the Court finds as immaterial the discrepancy over whether the panelists actually met with Frank. The key facts remain unrefuted: Frank delegated interviewing authority to the panel, the panel returned its unanimous recommendation, and Frank acted on that recommendation in his capacity as the selecting official. *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity . . . .").

4

current Rule 56(a)). The burden is on the movant to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. As the Fourth Circuit has recognized, district courts have an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323-24).

The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The opponent may not rest upon the mere allegations or denials of his pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

### III. Analysis

#### A. Overview

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to . . . privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a). A Title VII plaintiff may avert summary judgment and establish a claim for employment discrimination through either of two avenues of proof. First, a plaintiff may present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Second, a plaintiff may proceed under the familiar burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff pursuing this second proof avenue must first establish a prima facie case for discrimination and then demonstrate that the employer's "proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *abrogated on other grounds as recognized in Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)).

In this case, Plaintiff has failed to demonstrate that the selection of Webb was motivated in part or in whole by discriminatory animus.[6] Plaintiff must therefore proceed, if at all, via the burden-shifting *McDonnell Douglas* framework. For purposes of her Motion, Defendant concedes that Plaintiff has established a prima facie case for discrimination.[7] Therefore, the

---

[6] Plaintiff acknowledged in his deposition that he has not heard any of the panelists make derogatory remarks about men or Hispanic persons as a class. He indicated that Anderson once called another man a "dumbass," and he alluded to a "rumor going around in the office" concerning derogatory remarks about Hispanic persons. (ECF No. 52–3 at 77:1-79:24.) When pressed, however, Plaintiff conceded that he has never heard Anderson, Gibson, or Ames make such remarks. (*Id.* at 80:2-5.) Vague rumors and a passing comment directed toward another individual will not support Plaintiff's discrimination claim. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of his case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999) (per curiam)).

[7] Specifically, Plaintiff has shown that (1) he is a member of a protected group, (2) he applied for the position in question, (3) he was qualified for the position, and (4) Defendant rejected Plaintiff's application under circumstances giving rise to an inference of discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). That final prong of the prima facie case may be satisfied by a showing that the position was filled by an applicant outside of the plaintiff's protected class, *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994), which was indisputably the situation here.

Court must determine (1) whether Defendant has met her burden of production with nondiscriminatory reasons for selecting Webb and (2) whether there is a genuine issue of material fact concerning the legitimacy of those nondiscriminatory reasons.

### B. *Defendant's Burden of Production*

Once a prima facie case for discrimination is established, the defendant must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Although the defendant bears the burden of production at this stage, "the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (collecting cases).

Courts have acknowledged that job performance and relative employee qualifications are valid bases for employment decisions and that employers have discretion to choose among equally qualified candidates, provided their choices are not guided by unlawful criteria. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Moreover, the Fourth Circuit has recognized that subjective factors, such as "good interpersonal skills" and the "ability to lead a team," may sometimes outweigh objective factors like education and outside experience. *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995). At all times, it is the "perception of the decision maker," rather than that of the employee-applicant, which is relevant. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980).

In this case, Defendant has identified a host of nondiscriminatory business reasons for preferring Webb over Plaintiff. (ECF No. 52–1 at 10-12.) The three panelists—Anderson, Gibson, and Ames—described their rationales in affidavits and deposition testimony. Though each panelist highlighted particular aspects of Webb's robust professional background and

interview performance that made her an attractive candidate, none of their stated reasons were contradictory—and none betrayed even a hint of animus toward Plaintiff, toward men, or toward Hispanic, Malaysian, or African-American persons.

Plaintiff responds to this weighty evidence with a novel two-part requirement for Title VII nonselection cases. According to Plaintiff, the employer must present (1) *the* selecting official's statement of his actual, contemporaneous criteria and (2) *the* selecting official's explanation of why he believed the plaintiff did not meet those criteria as well as the selectee did. (ECF No. 55 at 6-7.) Here, Plaintiff claims, Defendant has failed to "identify the witness who is prepared to say, 'I made the decision, and I based it on the following facts.'" (*Id.* at 12.) Rather, Plaintiff contends, a jury could draw a variety of inconsistent conclusions about who the true decision maker was—ostensibly because (1) Frank claims that he did not "go behind" the panelists' recommendation but (2) Gibson recalls that the panelists presented their highlights to Frank and (3) as among the panelists, there is some evidence that Anderson may have taken the lead in the recommendation process.[8]

Plaintiff cites no authority, and the Court is aware of none, requiring a singular decision maker within an organization to produce its contemporaneous reasons for a particular hiring or promotion decision. Quite the opposite, courts have held that employers may overcome their *McDonnell Douglas* production burden in nonselection cases involving interview panels. *See, e.g.*, *Moore v. Mukasey*, 305 F. App'x 111 (4th Cir. 2008) (employer satisfied its burden where panel recommended three finalists, not including plaintiff, and supervisor thereafter selected

---

[8] Plaintiff draws this latter conclusion from Anderson's administrative affidavit, in which he stated that he "made a recommendation to the selection official" and then proceeded to explain why he believed Webb was better qualified than Plaintiff. (ECF No. 52–21 at 14.) However, in that same affidavit, Anderson described himself as a "member of the interviewing panel." (*Id.*) Taken in context, Anderson's statement appears to simply reference his role in the recommendation process or perhaps indicate that he conveyed the panel's unanimous recommendation to Frank, a point that is undisputed in the summary judgment record.

from among finalists); *Stevens v. Anne Arundel Cnty. Bd. of Educ.*, Civ. No. WDQ-08-2022, 2009 WL 3806374 (D. Md. Nov. 12, 2009) (employer satisfied its burden where a "decision not to promote [plaintiff] was based on the unbiased recommendation of [an] interview panel").

Furthermore, Plaintiff proffers no evidence to counter Defendant's basic narrative, *i.e.*, that Frank convened the panel, that the panelists formed a unanimous recommendation, and that Frank acted upon that recommendation in his authority as selecting official. Even if Gibson's recollection is correct, and the panelists did meet with Frank to explain their recommendation, no reasonable jury could find from that fact alone that "it was Mr. Frank who weighed the strengths and weaknesses of the candidates" and that "it is he who must provide the non-discriminatory reason for the selection." (ECF No. 55 at 14.) And *even if*, in spite of his insistence that he did not "go behind" the panel, Frank did exercise some judgment in making the final selection, no reasonable jury could find that he acted on any information apart from the candidates' statements of qualification (ECF Nos. 52–9, 52–10) and the recommendations of the panel. There is no indication in the summary judgment record that Frank conducted an independent inquiry or harbored a selection rationale in conflict with the panel's rationale, nor is there the slightest trace of evidence that he acted with animus toward Plaintiff or his class.

Plaintiff separately complains that there is "no evidence" the panelists relied on the qualifications and ranking criteria identified in the vacancy announcement, and therefore a jury could conclude that Defendant did not adequately identify the standards used by the decision maker. (*Id.* at 19.) Indeed, Anderson acknowledged that the vacancy announcement might not have included all the factors relevant to the final selection. (ECF No. 52–6 at 63:17-64:12.) However, Plaintiff does not argue—nor can he, in light of the record—that the panelists' rationales for recommending Webb were somehow incompatible with the posted requirements:

9

in fact, there is substantial overlap.  Moreover, some variance between objective hiring criteria and the subjective impressions of interviewers is inevitable.  *See McKinnon v. Blank*, Civ. No. DKC-12-1265, 2013 WL 781617, at *9 (D. Md. Feb. 28, 2013) (granting summary judgment to employer that posted vacancy announcement where interviewer did not "carr[y] out his evaluation of the interviewees according to any specific ranking system" but instead chose selectee in view of her "proven track record" and her "passion for the position").[9]

At bottom, the Court cannot responsibly turn a blind eye to the many nondiscriminatory reasons for hiring Webb that appear in the summary judgment record, simply because those reasons are traceable to several of Defendant's employees.  Nor will the Court impose on Defendant a novel requirement that she rigidly adhere to posted qualifications in selecting job applicants.  Instead, mindful that the employer in meeting its burden of production need not "persuade the court that it was actually motivated by the proffered reasons" but must simply set forth an explanation that is "legally sufficient to justify a judgment for the defendant," *Burdine*, 450 U.S. at 254-55, the Court concludes that Defendant has met her burden here.

### C. *Plaintiff's Burden of Persuasion*

Because Defendant has adequately—indeed, thoroughly—rebutted Plaintiff's prima facie case, it falls to Plaintiff to "prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Holland*, 487 F.3d at 214 (quoting *Hill*, 354 F.3d at 285)).  At this stage in the analysis, the *McDonnell Douglas* framework, with its presumptions and burdens, falls away, and the "sole remaining issue [is]

---

[9] This is not a case, as in *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639 (4th Cir. 2002), where the employer's hiring rationale has shifted throughout the course of litigation.  In *Dennis*, the Fourth Circuit—reviewing the denial of defendant's Rule 50(b) motion—concluded that a reasonable jury could have found the selection official's rationale pretextual:  the official offered inconsistent explanations on deposition and at trial, and both of those explanations conflicted further with the written job qualifications.  *Id.* at 646.  Moreover, the official actively sought out the selectee but did not even interview plaintiff or review her in-house work experience.  *Id.* at 643, 647.  Here, by contrast, each candidate was subject to the same hiring process and asked the same set of interview questions, and there is no evidence that any of the panelists' selection rationales have materially shifted.

discrimination *vel non.*" *Id.* (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). In a nonselection case such as this, the plaintiff can "prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). Importantly, however, a reason "cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphases in original). Thus, even where the plaintiff "demonstrates a prima facie case and pretext, his claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if 'no rational factfinder could conclude that the action was discriminatory.'" *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (quoting *Reeves*, 530 U.S. at 148).

Plaintiff here attempts to prove pretext by zeroing in on a single paragraph in Anderson's administrative affidavit, where Anderson listed reasons why he believed Webb was better qualified for the Supervisory Specialist position.[10] Plaintiff's approach is problematic for several reasons. First, while focusing exclusively on Anderson, Plaintiff fails to address Gibson's and Ames's rationales. Each panelist identified particular strengths in Webb's candidacy. Gibson, for instance, noted that Webb had superior managerial skills and experience (ECF No. 52–22 at

---

[10] Plaintiff's pretext theory apparently evolved during the course of discovery. In his Complaint, Plaintiff claimed that he was "clearly better qualified for the promotion than Ms. Webb was" because of his allegedly superior experience in four areas—project management, goal development, communication, and complex problem solving. (ECF No. 49 ¶¶ 42-62.) Plaintiff appears to have abandoned this theory in his Opposition to Motion for Summary Judgment, perhaps because the record shows that Webb had extensive relevant experience.

    In his Complaint, Plaintiff also alleged that (1) OCREO was sanctioned by an administrative judge over problems stemming from Webb's "failure to plan and manage workloads," (2) Plaintiff was "repeatedly called in to correct [Webb's] errors," and (3) management ended one of Webb's details prematurely due to her poor communication. (*Id.* ¶¶ 47-48, 59.) These allegations are troubling. However, there is no reference to the alleged sanction in either the summary judgment record or Plaintiff's opposition brief. And while Plaintiff alluded on deposition to the terminated detail and the errors he allegedly corrected, these issues were not raised in Webb's deposition, nor is there any independent evidence in the record to corroborate them. Such unsupported allegations, even taken as true, constitute at best a scintilla of evidence—insufficient to withstand summary judgment.

17), an observation corroborated by Webb's GS-14 status and by Plaintiff's admission that Webb had "more management experience than [he] had" (ECF No. 52–3 at 87:9-14).  And Ames praised Webb's "understanding of regional and headquarters perspectives" as well as her "experience as a team leader managing workloads for a team" and her "strong leadership competencies." (ECF No. 52–23 at 4.)  Where the employer has identified multiple reasons for preferring one candidate over another, the employee cannot prove pretext by carving out a subset of reasons and then comparing himself against that subset.  *Cf. Anderson*, 406 F.3d at 271 ("[Plaintiff] cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds.").

Second, even viewing Anderson's rationale in isolation, no reasonable jury would find that Plaintiff has discredited Anderson's rationale.  Plaintiff assails Anderson's written statement that "Ms. Webb had a wealth of experience in EEO counseling" because Anderson seemed to suggest on deposition that counseling experience was not an essential factor for the Supervisory Specialist position.  (ECF No. 55 at 22-23.)  But in that same deposition, Anderson explained that a "competitive GS-14 applicant . . . should be well versed in *all areas*" of the complaints process (ECF No. 52–6 at 76:18-19 (emphasis added)), a proposition Plaintiff nowhere refutes.[11]

Plaintiff also disputes Anderson's assertion that Webb had superior experience with "Acceptance/Dismissal of formal complaints," arguing that Anderson had confused "gathering and analyzing documents needed for the formal investigation" with "accepting and rejecting complaints." (ECF No. 55 at 23.)  Here, Plaintiff misunderstands the bounds of Title VII:  "An employer is liable only for discriminating on grounds that are improper, not for differentiating for reasons that are mistaken." *Tavernier v. Health Mgmt. Assocs., Inc.*, 498 F. App'x 349, 351

---

[11] For that matter, "expert knowledge of EEO counseling" is listed among the required qualifications in the vacancy posting (ECF No. 52–4 at 2), an irony given Plaintiff's complaint that Defendant did not rely on the posted standards.

(4th Cir. 2012). It is Anderson's sincere belief about Webb's qualifications that is relevant, not Plaintiff's perception about whether Anderson's belief was factually accurate.[12]

Finally, not only has Plaintiff failed to demonstrate that Anderson's (or, more broadly, the panel's) reasons for recommending Webb were false; he has utterly failed to show that "discrimination was the real reason," *St. Mary's Honor Ctr.*, 509 U.S. at 515. Aside from a passing remark and a rumor not associated with any of the panelists,[13] Plaintiff noted that he had "been voicing diversity in the office" because, at the time of the hire, "there were no Hispanic supervisors." (ECF No. 52–3 at 92:22-93:8.) It is unclear what Plaintiff means by "voicing diversity," and in any event, Plaintiff nowhere alleges that Defendant or her employees responded to such "voicing" with any kind of animus. With such a dearth of evidence pointing to discrimination, no reasonable jury could conclude that Defendant's selection of Webb was driven by unlawful intentions: "mere speculation by the plaintiff that the defendant had a discriminatory motive is not enough to withstand a motion for summary judgment." *McNeal v. Montgomery Cnty.*, 307 F. App'x 766, 774 (4th Cir. 2009).

In the end, this case is a straightforward one. Defendant exercised her business judgment in selecting a Supervisory Specialist via a panel; the panelists exercised their business judgment in recommending the candidate they deemed best suited for the job. Without reason to believe that the panelists misrepresented their selection rationales, and indeed without any admissible evidence that any one of them ever engaged in discrimination on the basis of gender, race, or national origin, let alone such discrimination directed toward Plaintiff, the Court must grant summary judgment to Defendant.

---

[12] Anderson admitted in his deposition that Plaintiff's application package referenced experience "review[ing] complainants['] cases and mak[ing] determinations on acceptance/dismissals." (ECF No. 52–6 at 82:21-83:1.) But Anderson added that "Mr. Camacho's answer was very scattered and . . . didn't provide any depth of detail regarding his experience." (*Id.* at 83:17-20.)

[13] *See supra* note 6.

*V. Conclusion*

For the foregoing reasons, an order shall enter GRANTING Defendant's Motion for Summary Judgment (ECF No. 52).

DATED this 15th day of September, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge